UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
 JAIME GUTIERREZ and RAMON            :
 GUTIERREZ,                           :
                                      :
                   Plaintiffs,        :    17-CV-6752 (PAE)
                                      :
          -against-                   :
                                      :
 TRYAX REALTY MANAGEMENT, INC.        :
 1027 WALLCO L.L.C., MICHAEL          :
 SCHMELZER, MATTHEW SCHMELZER,        :
 MIGUEL LEON, and CESAR MALDONADO,    :
                                      :
                   Defendants.        :
------------------------------------------------------------- x
```

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, NY 10118
(212) 687-7410

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................2

    I.     JAIME GUTIERREZ ................................................................2

    II.    RAMON GUTIERREZ ..............................................................5

    III.   THE NATURE OF THE WORK & BREAK POLICIES ...................6

    IV.   THE PHONES AND PHONE CALLS ..........................................8

    V.    METHOD OF COMPENSATION .................................................8

ARGUMENT .......................................................................................................9

    I.     THE SUMMARY JUDGMENT STANDARD ....................................9

    II.    PLAINTIFFS' SURREPTITIOUS BREAKS ARE NOT COMPENSABLE
            BECAUSE PLAINTIFFS ARE NEITHER "ON DUTY" NOR "ON CALL"
            WHEN THEY TAKE UNAUTHORIZED BREAKS WHILE THEY ARE
            SUPPOSED TO BE WORKING ..................................................10

         A.   This Circuit Defines "Work" As Either "On Duty" Or "On
              Call" Activities Performed Predominantly For The Benefit
              Of The Employer ..............................................................10

         B.   An Employee Who Engages In An "Unauthorized" Break
              Is Not Compensated Because He Is Neither "On Duty" Nor
              "On Call" .......................................................................13

         C.   The Plaintiffs Conflate Precedent: "On Duty" Cases Where
              Plaintiffs Are Paid And Heavily Restricted To Perform
              Certain Tasks During Their Personal Time Are Irrelevant
              In The Unauthorized Break Context ....................................15

         D.   Even If Plaintiffs' Breaks Were Not Unauthorized, They
              Would Still Not Be Compensable Because Plaintiffs Were
              Not On Call During The Break And Their Presence In
              Breakrooms Did Not Predominantly Benefit Tryax ................17

         E.   Application of Law to Facts ................................................18

    III.   MATERIAL ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON
            PLAINTIFFS' OVERTIME RATE CALCULATIONS BECAUSE
            DETERMINING WHETHER THERE WAS A CLEAR AND MUTUAL
            UNDERSTANDING BETWEEN THE PARTIES IS A FACTUAL INQUIRY .......20

A.  The Fluctuating Workweek Method Is Used To Calculate
    Overtime When An Employee Agrees To Receive A Fixed
    Salary For Fluctuating Hours ..................................................................20

B.  The Fluctuating Workweek Method Requires Employers
    To Pay Employees A Half-Time Overtime Rate, Not
    Time-And-One-Half ..............................................................................21

C.  District Courts In This Circuit Have Engaged In A
    Week-By-Week Analysis To Determine The Regular Rate
    Of Pay Based On Total Hours Worked Per Week Under
    The Fluctuating Workweek Approach ....................................................22

D.  Genuine Disputes Over Whether The Course Of Dealing
    Between Tryax And Plaintiffs Created A Clear And Mutual
    Agreement Is An Issue Of Fact—Especially Given The
    Split Of Authority ................................................................................23

CONCLUSION ..........................................................................................................24

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 9

*Armour & Co. v. Wantock*,
    323 U.S. 126 (1944) ........................................................................................... 11, 13, 18

*Babcock v. Butler County*,
    2014 WL 688122 (W.D. Pa. Feb. 21, 2014) ..................................................................... 11

*Banford v. Entergy Nuclear Operations, Inc.*,
    646 Fed. Appx. 89 (2d Cir. 2016) ................................................................................... 22

*Barbato v. Knightsbridge Properties*,
    2017 WL 9485716 (E.D.N.Y. Aug. 7, 2017) ................................................................... 21

*Chandris, Inc. v. Latsis*,
    515 U.S. 347 (1995) ......................................................................................................... 10

*Chopen v. Olive Vine, Inc.*,
    2015 WL 1514390 (E.D.N.Y. Mar. 13, 2015) ........................................................... 21, 23

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ......................................................................................................... 11

*Ethelberth v. Choice Sec. Co.*,
    91 F. Supp. 3d 339 (E.D.N.Y. 2015) .............................................................................. 11

*F.D.I.C. v. Great American Ins. Co.*,
    607 F.3d 288 (2d Cir. 2010) ............................................................................................... 9

*Giles v. City of New York*,
    41 F. Supp. 2d 308 (S.D.N.Y. 1999) ............................................................................... 21

*Gorzynski v. JetBlue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010) ................................................................................................. 9

*Inclan v. New York Hospitality Group, Inc.*,
    95 F. Supp. 3d 490 (S.D.N.Y. 2015) ............................................................................... 10

*Integrity Staffing Solutions, Inc. v. Busk*,
    135 S. Ct. 513 (2014) ....................................................................................................... 11

*Jiao v. Shi Ya Chen*,
    2007 WL 4944767 (S.D.N.Y. March 30, 2007) ......................................................... 15, 16

*Klein v. Torrey Point Group, LLC*,
    979 F. Supp. 2d 417 (S.D.N.Y. 2013) ............................................................................. 23

*LeCompte v. Chrysler Credit Corp.*,
    780 F.2d 1260 (5th Cir. 1986) ......................................................................................... 13

*Llolla v. Karen Gardens Apartment Corp.*,
    2014 WL 1310311 (E.D.N.Y. March 10, 2014) .......................................................... 17

*Man Wei Shiu v. New Peking Taste Inc.*,
    2014 WL 652355 (E.D.N.Y. Feb. 19, 2014) .............................................................. 23

*Mayhew v. Wells*,
    125 F.3d 216 (4th Cir. 1997) ................................................................................ 22

*McDermott Int'l, Inc. v. Wilander*,
    498 U.S 337 (1991) ............................................................................................ 10

*Moon v. Kwon*,
    248 F. Supp. 2d 201 (S.D.N.Y. 2002) ................................................................... 16

*Nelson v. Sabre Companies LLC*,
    2018 WL 3543523 (N.D.N.Y. July 23, 2018) .......................................................... 24

*O'Hara v. Weeks Marine, Inc.*,
    294 F.3d 55 (2d Cir. 2002) .................................................................................. 10

*O'Neil v. Mermaid Touring Inc.*,
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) ................................................................... 10

*O'Neill v. Mermaid Touring Inc.*,
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) ................................................................... 18

*Perkins v. Bronx Lebanon Hospital Center*,
    2016 WL 6462117 (S.D.N.Y. Oct. 31, 2016) ...................................................... 10, 12

*Redzepagic v. Hammer*,
    2017 WL 780809 (S.D.N.Y. 2017) ........................................................................ 16

*Reich v. Southern New England Telecom. Corp.*,
    121 F.3d 58 (2d Cir. 1997) ........................................................................ 11, 15, 20

*Ruffin v. MotorCity Casino*,
    775 F.3d 807 (6th Cir. 2015) ............................................................................... 18

*Santillan v. Henao*,
    822 F. Supp. 2d 284 (E.D.N.Y. 2011) ................................................................... 23

*Sheehy v. Santa Clara Valley Transportation Authority*,
    679 Fed. Appx. 568 (9th Cir. 2017) .......................................................... 14, 17, 19

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ...................................................................................... 11, 12

*Urnikis-Negro v. American Family Property Services*,
    616 F.3d 665 (7th Cir. 2010) ............................................................................... 22

*Vega v. Trinity Realty Corp.*,
    2015 WL 13203451 (S.D.N.Y. July 28, 2015) ......................................................... 17

*Wong v. Hunda Glass Corp.*,
    2010 WL 2541698 (S.D.N.Y. June 23, 2010) .......................................................... 21

**STATUTES**

12 N.Y.C.R.R. § 146-1.4 ................................................................................................ 21

29 C.F.R. § 778.109 ...................................................................................................... 21

29 C.F.R. § 778.113(a) .................................................................................................. 21

29 C.F.R. § 778.114(a) ............................................................................................ 21, 23

29 C.F.R. § 778.223 ...................................................................................................... 12

29 C.F.R. § 785.15 ........................................................................................................ 13

29 C.F.R. § 785.18 ........................................................................................................ 12

29 C.F.R. § 785.19 ........................................................................................................ 12

29 U.S.C. § 207(a)(1) ............................................................................................... 11, 21

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................... 9

## PRELIMINARY STATEMENT

Defendants Tryax Realty Management, Inc., 1027 Wallco L.L.C., Michael Schmelzer, Matthew Schmelzer, Miguel Leon, and Cesar Maldonado (collectively, "Tryax" or "Defendants") submit this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment and in support of Defendants' cross-motion for partial summary judgment.

Plaintiffs Jaime and Ramon Gutierrez demand overtime compensation for company time they intentionally repurposed for their own personal benefit. And they claim that—even though their unauthorized breaks often extended longer than one hour—they should be paid for their surreptitious breaks simply because they had a company phone nearby some of the time. They also argue that when calculating their overtime (including the unauthorized breaktime) they should be paid one-and-one-half times their regular rate.

But Plaintiffs' surreptitious breaks are not compensable because Plaintiffs are neither "on duty" nor "on call" when they take unauthorized breaks while they are supposed to be working. And even if the Plaintiffs' breaks were not unauthorized, they would still not be compensable because the Plaintiffs were not "on call" simply because they were physically present on the premises with a phone on their hip. Moreover, even if they were "on call," the *de minimis* calls they received (at most) once per month did not amount to time that predominantly benefitted Tryax. Furthermore, issues of fact preclude summary judgment on Plaintiffs' overtime rate calculations because the fluctuating workweek method requires employers to pay employees a half-time overtime rate.

## STATEMENT OF FACTS

As set forth in the accompanying Local Rule 56.1 Statement, the following facts are undisputed:

### I.   Jaime Gutierrez

Jaime Gutierrez ("Jaime") has been continuously employed by Tryax as a porter for the last 20 years.  (J.G. Dep. Tr. pp. 7-8).  A porter's responsibility is to ensure the cleanliness of the building to which he is assigned.  (J.G. Dep. Tr. pp. 9); (Maldonado Dec., ¶ 1); (Leon Dec., ¶ 7 & 13).  Jaime was assigned to the residential apartment building at 1027 Walton Avenue, Bronx, New York ("1027").  (J.G. Dep. Tr. pp. 10).

There is also superintendent assigned to 1027 Walton Avenue, Daniel Richiez.  (J.G. Dep. Tr. pp. 11).   Jaime's job includes taking out garbage, sweeping the property's interior and exterior, mopping the property's interior, and cleaning surfaces, such as glass and walls.  (J.G. Dep. Tr. pp. 20-22); (Maldonado Dec., ¶ 1); (Leon Dec., ¶ 7 & 13).

Jaime stressed that cleaning his building required constant activity on his part:

Q.    Anything else?
**A.    Constantly, continuously, all
the time, all the time you got to be -- you
turn y- -- your back, you turn around and
at the moment, some -- immediately
something happens.**

(J.G. Dep. Tr. pp. 21-22).

Ramon Gutierrez ("Ramon") is Jaime's brother.  (J.G. Dep. Tr. pp. 24-25).  Jaime drives himself and Ramon to and from work.  (J.G. Dep. Tr. pp. 24-25).

Jaime was provided and lived in a rent-free studio apartment in 1027 Walton Avenue for a time.  (J.G. Dep. Tr. pp. 40).  Though Jaime moved in 2008, he continued to use it as a break room.  (J.G. Dep. Tr. pp.40-41).  The unit is furnished with a bed, bathroom, stove and

refrigerator.  (J.G. Dep. Tr. pp.42).  Jaime concedes there are no work duties for him to perform in the apartment/break room.  (J.G. Dep. Tr. pp. 64).

Jaime begins his workday by spending between 35 and 90 minutes outside the building sweeping and organizing the garbage, depending upon the number of garbage bags and containers.  (J.G. Dep. Tr. pp. 59-60).  Then, when he first enters the building, he changes into his uniform, which takes five to ten minutes (J.G. Dep. Tr. pp. 60, 64-65).  Jaime's first job task after changing into his uniform is to sweep the interior of the building, which takes between 25-30 minutes.  (J.G. Dep. Tr. pp.67-68).  When he is done sweeping, Jaime goes to the basement to prepare a mop and pail of water, which takes 10-15 minutes.  (J.G. Dep. Tr. pp. 69).  Jaime mops the building's entire interior each day, which takes between two and two-and-a-half hours.  (J.G. Dep. Tr. pp. 70-72).

In addition to these duties, Jaime exits the building periodically during the day to check for garbage and to sweep as needed.  (J.G. Dep. Tr. pp. 71-73).  Jaime describes that there is a constant need to do this—between eight and ten times a day—because there is always garbage accumulating outside the building.  (J.G. Dep. Tr. pp. 71-73). Jaime also cleans various surfaces—glass, walls, and hallways—as needed when he sees they are dirty.  (J.G. Dep. Tr. pp. 75-77).  Jaime organizes the garbage during the day and places it on the street on pick-up days.  (J.G. Dep. Tr. pp. 81-86).

According to Jaime, there was always something in need of cleaning, and it was his job continually to look for things to clean:

> Q.    Okay. So would you say it was
>        a requirement of your job to continually
>        round the building to look for things that
>        need cleaning?
>        ***
> **A.    Keep**

- 3 -

> **the building.**
> **Oh, I got to clean the light --**
> **light -- light fixt- -- fixtures, also.**
> Q.  Is -- is it your experience at
>      1027 that if you look, you could always
>      find something that needs cleaning?
> **A.  Yes.**
> **Because that is my job,**
> **cleaning. To keep the building**
> **clean.**

(J.G. Dep. Tr. pp. 78-79).

According to Jaime, he cannot take breaks during his workday because, in his words,

"I've got to be moving around all the time," and "[His] work is constant."  (J.G. Dep. Tr. pp. 89).

Further on this point, Jaime testified:

> Q.  Okay. Not one time? You've
>      never been in that apartment during the
>      workday for more than 10 or 15 minutes?
>              ***
> **A:  I cannot stay**
> **more than that because my thing is**
> **keep checking the building and – and**
> **the garbage.**

(J.G. Dep. Tr. pp. 93-94).

On one occasion in 2015, general manager Mike Centeno ("Centeno") visited the

property and found Jaime in his apartment during working hours.   (J.G. Dep. Tr. pp. 96); (Leon

Dec., ¶ 12).  Centeno told Jaime that "if [Jaime] was to continue like that again, [Centeno] was

going to punish him."   (J.G. Dep. Tr. pp. 100-101).   As Miguel Leon ("Leon"), the Director of

Administration explains, "[t]o the extent Jaime had any confusion about Tryax's expectations

concerning breaks, that incident should have cleared it up for him." (Leon Dec., ¶ 12). Jaime

understood this to be a directive that he could not be in the apartment during working hours:

> Q.  Okay. So you understood Mike
>      to be telling you he did not want you in

the apartment during working hours?

**A.      That's what I understood.**

(J.G. Dep. Tr. pp. 101).

## II.    <u>Ramon Gutierrez</u>

Ramon has been employed as a porter by Tryax for 20 years.  (R.G. Dep. Tr. pp. 7-8).

Ramon alternates responsibilities for three apartment buildings—1454 Walton Avenue ('1454"),

1475 Walton Avenue ("1475"), and 1478 Walton Avenue ("1478")--which he shares with

another porter, Miguel Batista ("Batista").  (R.G. Dep. Tr. pp. 8-11).  Ramon and Batista's

responsibilities are as follows: (a) Ramon has primary responsibility for 1454, (b) Batista has

primary responsibility for 1478, (c) Ramon and Batista split responsibility for 1475, (d) Ramon

and Batista split responsibility for cleaning Tryax's office (located within the building at 1478)

and (d) Ramon and Batista cover for one another on their respective days off.  (R.G. Dep. Tr. pp.

9-12).

Ramon's first job task in the morning is remove the trash from the compactor in the

basement of 1454, which takes between 30-90 minutes.  (R.G. Dep. Tr. pp. 14, 29).  Then,

Ramon dons his uniform, which takes fifteen minutes, and he continues cleaning at 1454.  (R.G.

Dep. Tr. pp. 14-15, 30).  Ramon has the same cleaning duties as Jamie.  (R.G. Dep. Tr.

pp. 15-17); (Maldonado Dec., ¶ 1); (Leon Dec., ¶ 7 & 13).  After Ramon sweeps, mops and

organizes the garbage at 1454, he walks to 1475 to perform the same tasks, dividing the building

between himself and Batista.  (R.G. Dep. Tr. pp. 16, 34).  Around 3 p.m., Ramon cleans the

office.  (R.G. Dep. Tr. pp. 35).  After cleaning the office between 3 and 4 p.m., Ramon rounds

the building 1454's entire interior and exterior, cleaning as needed.  (R.G. Dep. Tr. pp. 37-38).

On most days, after rounding 1454, Ramon goes to 1475, to round and clean as needed.  (R.G.

Dep. Tr. pp. 38-39).

Ramon describes the "never-ending" rounding process as visiting a building's every floor, spotting conditions requiring cleaning.  (R.G. Dep. Tr. pp. 39-40); (R.G. Dep. Tr. pp. 17) (stating "You always have something to do").

Ramon's break room is the basement of 1454.  (R.G. Dep. Tr. pp. 31).  It contains a chair, microwave and refrigerator.  (R.G. Dep. Tr. pp. 44-45).  Ramon uses the room to rest.  (R.G. Dep. Tr. pp. 45).  He keeps a few work materials in there, such as a pair of gloves, a utility knife and a garbage bag.  (R.G. Dep. Tr. pp. 52).  When he needs to enter the break room to grab a tool or a garbage bag, "[he] go[es] in and out immediately."  (R.G. Dep. Tr. pp. 53).  After Ramon has completed the day's tasks, Jaime picks him up.  (R.G. Dep. Tr. pp. 41).  Where Jaime is not already at the building waiting for him, Ramon waits in his break room for Jaime to arrive. (R.G. Dep. Tr. pp. 42).

### III.   The Nature Of The Work & Break Policies

Porters are permitted a one-hour break for lunch. (Leon Dec., ¶ 10); (Maldonado Dec., ¶ 2).  That is their only authorized break. (Leon Dec., ¶ 10)  There is no management presence in the buildings where Plaintiffs work. (Leon Dec., ¶ 14). The porters are free to do as they wish on their lunch break. (Leon Dec., ¶ 10).  They can stay at the building or leave. (Leon Dec., ¶ 10). They can sleep. (Leon Dec., ¶ 10)  They can use their phones. (Leon Dec., ¶ 10). They engage in other personal activities while on break, such as doing laundry or washing their car.  (Ex. G). Other than their authorized, one-hour break, the porters are expected to be working. (Leon Dec., ¶ 11 & 14).

Tryax only became aware after this lawsuit was filed the extent to which Jaime and Ramon were taking time for themselves. (Leon Dec., ¶ 14).  Tryax enlisted the assistance of an outside vendor to perform an initial review of video camera footage from Plaintiff's buildings. (Heredia Dec., ¶ 2).  The vendor created logs detailing their daily movements from when they

first arrived on-site in the morning until they last were seen in the afternoon. (Heredia Dec., ¶ 2). For each day, Edgardo Heredia was asked to verify the first entry, the last entry, and the entries noted by the vendor as "breaks." (Heredia Dec., ¶ 3).  For Heredia's footage review, a "break" was defined as periods exceeding twenty minutes in a break area or away from the property. (Heredia Dec., ¶ 3).  Heredia verified the logs produced by the vendor by visually confirming that the actual video image matched its corresponding description in the vendor's log (Heredia Dec., ¶ 4).

Tryax has no policy or practice of hiring and paying porters to be inactive. (Leon Dec., ¶ 11).  Leon is "unaware of any supervisor or manager at Tryax ever telling the porters they could take breaks whenever they want, without management approval, so long as they answer their phones." (Leon Dec., ¶ 11).  Leon "never told Jaime or Ramon they are permitted to take unscheduled breaks on their own without permission." (Leon Dec., ¶ 11).  Cesar Maldonado ("Maldonado") "never told Jaime or Ramon they can take breaks whenever they want." (Maldonado Dec., ¶ 2).  Neither Plaintiff told Maldonado they were taking breaks in addition to their lunch break. (Maldonado Dec., ¶ 2).

Porters are not responsible for emergencies. (Leon Dec., ¶ 7).  Maldonado does "not rely on Jaime or Ramon to deal with emergencies." (Maldonado Dec., ¶ 3).  The superintendents are the primary contact for dealing with issues at the buildings. (Leon Dec., ¶ 7).  Their respective duties do not overlap. (Maldonado, Dec. ¶ 4).  Supers are given work orders ahead of time and can plan their day around those work orders. (Maldonado Dec., ¶ 4).  Instances where a porter is asked to help a super are usually scheduled. (Maldonado Dec., ¶ 4).  Apartment turn-overs are one example of a scheduled event. (Maldonado Dec., ¶ 4).  These usually happen at the end of the month when a tenant vacates and are known ahead of time. (Maldonado Dec., ¶ 4).  Porters

are not typically called upon by supers for last-minute help. (Maldonado Dec., ¶ 4).  The porter's

regular job responsibilities are to round the building and keep it clean. (Leon Dec., ¶ 9).

IV.   **The Phones And Phone Calls**

Both Jamie and Ramon were issued mobile phones in connection with their employment.

(Leon Dec., ¶ 4).  Having a phone is not a necessary part of a porter's job. (Maldonado Dec.,

¶ 5).  If the phones were taken away, Jamie and Ramon's job would still be to clean the

buildings. (Maldonado Dec., ¶ 5).  If the phones were taken away, Plaintiffs would still be able to

clean the buildings. (Maldonado Dec., ¶ 5).  In May of 2014, Jamie returned his phone because

he said he did not need it. (Leon Dec., ¶ 4).

Tryax aggregated Ramon's phone records between 2012 and 2018. (Leon Dec., ¶ 4).

Tryax aggregated Jamie's phone records between 2012 and May 2014. (Leon Dec., ¶ 4).  These

records were maintained for Tryax in the ordinary course of business by MetTel. (Leon Dec.,

¶ 3).  Leon sorted the incoming call logs maintained by MetTel by the "called from" category.

(Leon Dec., ¶ 5).  Within this category, Leon searched for calls from Tryax personnel. (Leon

Dec., ¶ 5).  Leon searched for calls to Jaime and Ramon from Tryax's office lines, his own cell

phone, Matthew Schmelzer's cell phone, Cesar Maldonado's cell phone, and from the cell

phones of Daniel Richiez, Tony Cepeda, Julio Laspina, Carlos Munoz, and Miguel Batista.

(Leon Dec., ¶ 5). Between 2012 and May 2014, Jamie received 44 calls from Tryax-related

numbers, (Leon Dec., ¶ 6), which is approximately one Tryax call every three weeks during this

time period. (Leon Dec., ¶ 6).  Between 2012 and 2018, Ramon received a total of 21 calls from

Tryax-related numbers, (Leon Dec., ¶ 6), which is approximately one Tryax call every fifteen

weeks during this six-year time period. (Leon Dec., ¶ 6).

V.   **Method of Compensation**

Jaime and Ramon were each paid a fixed weekly salary.  (Def. Exs. L and M).  Jaime and Ramon each signed annual Notices of Pay Rate.   (Def. Ex. J and K).  For each year from 2012-2017, Jaime's Notice of Pay Rate indicated a fixed weekly salary and excluded any statement concerning a number of fixed hours the salary was intended to cover.  (Ex. J).  In the years 2015 and 2016, Ramon's Notice of Pay Rate indicated a fixed weekly salary and excluded any statement concerning a number of fixed hours the salary was intended to cover.  (Ex. K).

Based on the undisputed facts, and as explained below, the Court should grant Defendants' motion and deny Plaintiffs' motion for partial summary judgment.

## **ARGUMENT**

### I.    **The Summary Judgment Standard**

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The relevant substantive law will determine "which facts are critical and which facts are irrelevant." *Id.*  Factual disputes are "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In assessing the record to determine whether there is [such] a genuine issue to be tried, [the court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 291 (2d Cir. 2010) (internal quotes omitted). "Where the moving party meets that burden, the opposing party must

come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts…and may not rely on conclusory allegations or unsubstantiated speculation." *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 496-97 (S.D.N.Y. 2015).

Importantly, when the court is faced with an issue that concerns "a mixed question of law and fact," an especially careful analysis of both undisputed facts and the relevant law is necessary because "[s]ummary judgment [will still be] appropriate 'where the facts and the law will reasonably support only one conclusion.'" *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 63-64 (2d Cir. 2002). *See McDermott Int'l, Inc. v. Wilander*, 498 U.S 337, 356 (1991); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 371 (1995).

The issue of whether an employee is entitled to overtime compensation, as in the case at bar, "presents a mixed question of law and fact. It is for the court to determine as a matter of law whether the plaintiff's activities constitute work and it is for the fact finder to determine as a question of fact how much of the plaintiff's time was spent within the definition of work and how much of that time was spent with the employer's actual or constructive knowledge." *O'Neil v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 580 (S.D.N.Y. 2013). *See also Perkins v. Bronx Lebanon Hospital Center*, 2016 WL 6462117, at *3 (S.D.N.Y. Oct. 31, 2016).

**II.   Plaintiffs' Surreptitious Breaks Are Not Compensable Because Plaintiffs Are Neither "On Duty" Nor "On Call" When They Take Unauthorized Breaks While They Are Supposed To Be Working**

    **A.   *This Circuit Defines "Work" As Either "On Duty" Or "On Call" Activities Performed Predominantly For The Benefit Of The Employer***

The Fair Labor Standards Act ("FLSA") "obligates employers to compensate employees for hours in excess of 40 hours per week at a rate of 1 ½ times the employees' regular wages."

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012); 29 U.S.C. § 207(a)(1).[1] In overtime cases, questions concerning the compensability of inactive periods longer than 20 minutes the central issue is "whether employees are required to 'work' [during the break] as that term is understood in the FLSA." *Reich v. Southern New England Telecom. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) ("*SNET*").

Although the FLSA itself does not define "work," the Supreme Court has interpreted the word through numerous decisions. *Id.* According to the Supreme Court, "work" means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014). Emphasizing that this is a fact-bound inquiry, the Supreme Court has repeatedly emphasized the notion that "work" is defined through the lens of a *predominant benefit* standard, which requires the court to ask "[w]hether the [employee's] time is spent predominantly for the employer's benefit or for the employee's[.]" *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). *See also Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944) (similarly emphasizing the "time given by the employee toi [sic] the employer").

Following and remaining consistent with Supreme Court precedent, this Circuit (and others[2]), have decided to analyze whether an employee's expenditure of time is considered "work" under the FLSA and NYLL using the "predominant benefit" standard, which "require[s] compensation for a meal break [only when] a worker performs activities [during that break] *predominantly for the benefit of the employer*." *SNET*, 121 F.3d at 64 (emphasis supplied). In

---

[1]   New York Labor Law "mirrors" the Fair Labor Standards Act in compensation provisions, so courts apply the same analysis to both. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359 (E.D.N.Y. 2015).

[2]   *See Babcock v. Butler County*, 2014 WL 688122, at *4-5 (W.D. Pa. Feb. 21, 2014) (discussing cases from numerous Circuits that have similarly used the "predominant benefit" test).

other words, if the employer is not predominantly benefitting, then the employee is not

"working," and no compensation for that time is required. In adopting this reading of Section

785.19, the Second Circuit in *SNET* realized that a literal interpretation of the regulation would

require an employee to be "*completely* relieved from duty" in order for the break time to be

uncompensated, and such an interpretation would ride roughshod over Supreme Court precedent

emphasizing the much less absolute "predominant benefit" standard. *Id.* at 65.

This "predominant benefit" standard is applied to determine the compensability of a

break regardless of whether the employee is "on duty" or "on call." *Perkins*, 2016 WL 6462117

at *4 ("The same standard applies if the employee is 'on call' during the meal period."). Breaks

that are short, between 5 and 20 minutes, and common in the industry are deemed compensable

"rest" periods. 29 C.F.R. § 785.18. But many longer breaks, such as "bona fide meal periods[,]

are not [compensable] worktime." 29 C.F.R. § 785.19.

This predominant benefit standard is satisfied in several ways, but in all instances,

employees compensated for their time must be engaged in work. The statutory term "hours

worked" has been defined broadly. *See* 29 C.F.R. § 778.223. But to the extent an employee is not

actively on duty and not engaging in active, compensable work, his inactive time may still be

compensable where his freedom is restricted for the benefit of the employer because he was

specifically paid to remain on call and available. *See Skidmore*, 323 U.S. at 137 ("[An

employee's] compensation may cover both waiting and task, or only performance of the task

itself."). Whether it is a "stenographer who reads a book while waiting for dictation, a messenger

who works a crossword puzzle while awaiting assignments, [a] fireman who plays checkers

while waiting for alarms[, or] a factory worker who talks to her fellow employees while waiting

for machinery to be repaired," in all of these examples, the time "belongs to and is controlled by

the employer" because when you are "engaged to wait," "waiting is an integral part of the job" being compensated. 29 C.F.R. § 785.15. *See Armour & Co.*, 323 U.S. at 133.

The difference between the compensable, on-call wait periods that exist in these jobs and that of the Plaintiffs in this case is in the purpose of the task: a stenographer can only type to the extent words are being dictated; a firefighter can only suppress fires that are already ablaze; and factory workers can only work with machinery that is functioning. They are either paid to remain available during a window of time, on a moment's notice (e.g., a fireman), or waiting is an inevitable reality of the job (e.g., waiting for machinery to be repaired). In each of these examples, the worker remains actively involved in the task for which he was paid and is under the employer's control. Conversely, in this case, Plaintiffs admit there is no shortage of work, such as might create periods of inactivity.  And there no record evidence that Defendants require or intended to pay Plaintiffs to be inactive.  The Plaintiffs in this case are paid to work, and they purposefully removed themselves from the job for which they were hired and delayed the completion of the tasks they were paid to complete.

**B.**     *An Employee Who Engages In An "Unauthorized" Break Is Not Compensated Because He Is Neither "On Duty" Nor "On Call"*

Employees who engage in an "unauthorized" break—like the Plaintiffs in this case—are acting outside of their duties and are therefore neither "on duty" nor "on call," disqualifying their breaktime from being compensable. *See generally LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) (mentioning that the FLSA "does not place a 'good faith' burden upon employees who seek [compensation] for their overtime work, unless the[y]…worked unauthorized overtime or falsified records"). In a case nearly identical to the one at bar, the Ninth Circuit held that the "FLSA does not obligate the employer to compensate an employee for unauthorized rest breaks." *Sheehy v. Santa Clara Valley Transportation Authority*, 679 Fed.

Appx. 568, 569 (9th Cir. 2017). Much like the Plaintiffs here, who fell into a routine pattern of

taking themselves off-duty by surreptitiously retreating to their breakrooms or elsewhere for

extended, hour-long periods, the plaintiff in *Sheehy* purposefully squandered (and arguably stole)

16 minutes of company time per day. *Sheehy v. Santa Clara Valley Transportation Authority*,

2015 WL 632252, at *1-2 (N.D. Cal. Feb. 13, 2015), *aff'd*, 679 Fed. Appx. 568 (9th Cir. 2017).

   Sheehy was a train operator responsible for bringing the trains back to the storage yard

after each shift. *See Id.* at *1. Like Plaintiffs, who removed themselves from the ordinary course

of their cleaning duties by meandering into a breakroom in secret, the plaintiff in *Sheehy* would

arrive to his terminal on time before taking his unauthorized break. *Id.* at *2. While on-duty, he

would wait and "routinely spen[d] up to 16 minutes at the terminal station before heading back"

to continue working. *Id.* When he submitted this unauthorized break time for overtime

compensation, the defendant investigated, discovered the unauthorized activity, and denied the

overtime. *Id.* Sheehy filed an overtime claim, and the court sided with the employer, which had

"hard evidence—in the form of undisputed transit reports—that show[ed] Sheehy consistently

arriv[ing] on time at the terminal station but paus[ing] for up to 16 minutes before returning the

train to the yard." *Id.* at *3. The court explained the company was "not required to compensate

Sheehy for overtime pay because the time at issue was not 'an integral and indispensable part of

the principal activities' of the employee under the FLSA." *Id.* at *2.

   Without explicitly naming the predominant benefit standard, the Ninth Circuit engaged in

the same analysis employed by the Second Circuit. The lower court was bothered by Sheehy's

intentional departure from his job—which involved intentionally shirking active duties for which

Sheehy was compensated to perform. The employer paying Sheehy to pull train cars attained no

benefit from Sheehy's surreptitious, unauthorized 16-minute break. Rather than

mischaracterizing Sheehy's job duties as a permissible break, as the Plaintiffs attempt to do here, the court recognized the difference between an ***authorized*** break and ***purposeful delay in the completion of work*** (i.e., an unauthorized break). The former is compensable; the latter is not.

      C.    ***The Plaintiffs Conflate Precedent: "On Duty" Cases Where Plaintiffs Are Paid And Heavily Restricted To Perform Certain Tasks During Their Personal Time Are Irrelevant In The Unauthorized Break Context***

The Plaintiffs cite five cases in support of the blanket proposition that "time spent on the employer's premises *beyond* regularly scheduled hours is compensable when the employee was required to be there." *See* ECF Doc. 72, at 13. But "the determination of what constitutes work is necessarily fact-bound." *SNET*, 121 F.3d at 64. As closer analysis reveals, Plaintiffs' cases are off the mark.

Although it is accurate to state that the plaintiff in *Jiao* was entitled to compensation for the full time he was required to be on the premises, including night hours, Plaintiffs left a few crucial details unmentioned. *See Jiao v. Shi Ya Chen*, 2007 WL 4944767, at *12 (S.D.N.Y. March 30, 2007). First, "[d]uring the daytime and evening hours, when Jiao was not cleaning or doing laundry, he was required to be at the reception desk in the hotel lobby. He was not free to leave, as he had to answer the phones, allow guests inside, and check guests in and out of the hotel." *Id.* Second, "[a]lthough Jiao may have engaged in personal activities while sitting at his desk,…he was there primarily for the benefit of his employer." *Id.* Jiao was even "reprimanded by Chen" (his boss) "when he was unavailable to answer the phone or perform…other tasks[.]" *Id.* This is a starkly different factual scenario than the case at bar. Here, Plaintiffs were not *required* to be in the breakroom. Instead, they were required to be actively working: cleaning the building. By retreating into the breakroom for an unauthorized break, they simply put off the active job duties that they admit were ever-present in favor of rest. The plaintiff in *Jiao* and the Plaintiffs are incomparable.

- 15 -

Following *Jiao*, the Plaintiffs attempt to rely on *Moon*. But this case is distinguishable. *Moon* concerned a hotel maintenance man entitled to overtime pay for his *evening* hours, but not for his *overnight* hours. Importantly, this Court explained that the "fact that Moon was present in the hotel during the periods of inactivity…does not mean that he was 'on duty' during those intervals[.]" *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002). The Plaintiffs' argument that they should be paid for their unauthorized breaks is essentially a repackaged version of the time *Moon* stated was not compensable in the above quote. Plaintiffs would like to be paid for time they did not work merely because they were physically present at work. This time is not compensable.

Some of Moon's time was compensable because "the periods of inactivity during the evenings were considerably shorter, making it…difficult for him 'to use the time…for his own purposes.'" *Id.* at 230. Unlike the plaintiff in *Moon*, Plaintiffs here spoliated company time and made it their own. It is more accurate to say that the Plaintiffs' personal time was interfering with the Company's time—not the other way around.

The Plaintiffs next cite *Redzepagic* for the proposition that the "court used a letter from the employer…as evidence that the employee was not able to put his time into personal use," ECF Doc. 72, at 14, but it is unclear why this is particularly relevant. The letter from the employer in that case emphasized that the plaintiff was "required to be available for emergencies even when off-duty." *See Redzepagic v. Hammer*, 2017 WL 780809, at *8 (S.D.N.Y. 2017). The letter in the case at bar states nothing of this sort. To the contrary, the letter here specifically told Jamie that he was not engaged to wait; he was engaged to work. The on-call when off-duty analogy to *Redzepagic* is irrelevant and unsupported.

*Vega* and *Llolla* are cited by comparison to the above three cases. Plaintiffs attempt to draw a line between regular time and time outside of a worker's regular hours, claiming that any time within regular hours is compensable. *See Vega v. Trinity Realty Corp.*, 2015 WL 13203451, *6 (S.D.N.Y. July 28, 2015). But their attempts to analogize their case to an on-duty / regular hours fact pattern falls flat because unauthorized breaks are not part of a worker's regular, compensable hours. As demonstrated above in *Sheehy*, employers are not obligated to pay for unauthorized breaks that essentially amount to stolen company time. Furthermore, in *Llolla*, the plaintiff did "not establish[] that the time he spent in his apartment outside of his regular hours was not his own," and "there [was] no basis on which to conclude that Llolla was forced to wait by the phone or spend that time for his employer's benefit except when he was actively engaged in an on-call matter." *Llolla v. Karen Gardens Apartment Corp.*, 2014 WL 1310311, at *8 (E.D.N.Y. March 10, 2014). This reasoning strengthens the Defendants' position. The mere fact that Plaintiffs were available by phone, *see* ECF Doc. 72, at 24, does not mean they were on call. Most of the phone calls received by Plaintiffs were from superintendents and regarding future, scheduled events. Plaintiffs were not required to remain within earshot of their phone and respond with the diligence of a firefighter responding to an alarm.

### D.   *Even If Plaintiffs' Breaks Were Not Unauthorized, They Would Still Not Be Compensable Because Plaintiffs Were Not On Call During The Break And Their Presence In Breakrooms Did Not Predominantly Benefit Tryax*

"Courts have consistently held that 'on-call' time can constitute work and is compensable under the FLSA where an employer restricts an employee's ability to use time freely for the [his] own benefit." *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 581 (S.D.N.Y. 2013). The Supreme Court has emphasized that "time spent lying in wait…may be treated…as a benefit to the employer." *Armour & Co.*, 323 U.S. at 134. The focus remains on whether "the time [was] spent predominantly for the employer's benefit[.]" *Id.* "Whether the time is spent predominantly

for the employer's…benefit depends on the totality of the circumstances." *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6ᵗʰ Cir. 2015). "It is only when an employee [must] give up a substantial measure of his time and effort that compensable…time is involved." *Id.* at 812.

Plaintiffs assert that they are on call because they "available and responsive to calls during their working hours, whether on or near the premises." *See* ECF Doc. 72, at 24. This alone is not enough. "Numerous courts…have declined to find that an employer's requirement that an employee carry a radio and respond if necessary converts the meal time to work time." *See Ruffin*, 775 F.3d at 812. Much like monitoring a two-way radio, the requirement that a worker carry a phone is not enough to establish on-call liability. *See Id.* ("monitoring a radio, and being available if called is a de minimis activity, not a substantial job duty."). The Plaintiffs here, like the plaintiff in *Ruffin*, were "adequately and comfortably" on break when they retreated to their unauthorized breaks. Interruptions—to the extent they even occurred—were minimal or concerned scheduled events that did not require an immediate response. *Id.* It was the Plaintiffs who predominantly benefitted during this unauthorized break time, not the Defendants.

### E.    Application of Law to Facts

Every time the Plaintiffs removed themselves from the job they were being paid to perform without permission—and for no reason other than to misappropriate paid company time as their own—they engaged in unauthorized breaks. This time is not compensable here for the same reason it was not compensable in *Sheehy*: purposeful waste of company time does not predominantly benefit the employer.

Jaime and Ramon both conceded that their jobs required constant activity and were "never-ending." (J.G. Dep. Tr. pp. 21-22); (R.G. Dep. Tr. pp. 17). They were each tasked with various duties meant to keep their respective buildings clean. (J.G. Dep. Tr. pp. 20-22); (R.G. Dep. Tr. pp. 15-17); (Maldonado Dec., ¶ 1); (Leon Dec., ¶ 7 & 13). These tasks necessitated so

much attention that, aside from the hour-long, authorized lunch-break afforded to Jaime and Ramon (Leon Dec., ¶ 10), they each had to be "constantly moving around all of the time." *See, e.g.*, (J.G. Dep. Tr. pp. 89).

But when this case was filed, Defendants learned that—instead of working—Plaintiffs were taking breaks, in addition to their lunch break, during company time. (Leon Dec., ¶ 14). These breaks were unauthorized. (Leon Dec., ¶ 11). No one told Plaintiffs they could take breaks on a whim. *See* (Leon Dec., ¶ 11). And even though they knew their jobs required constant circling of the property, and although Jaime was warned that unauthorized breaks could result in punishment when he was found in his breakroom during company time, video surveillance proves Plaintiffs continued to take routine, unauthorized breaks anyway. *See* (J.G. Dep. Tr. pp. 96, 100-101); (Heredia Dec., ¶ 2-5) (exemplifying instances of Plaintiffs' unauthorized breaks longer than 20 minutes).

Plaintiffs conceded there is no work to be done in the breakroom. *See, e.g.*, (J.G. Dep. Tr. pp. 64). And to the extent a stray pair of gloves or garbage bags can be found there, the time spent to receive such items is only momentary. *See* (R.G. Dep. Tr. pp. 53). Therefore, there is no genuine triable issue of fact to dispute that Plaintiffs' unauthorized breaks did not predominantly benefit Defendants, and under *SNET*, summary judgment for the Defendants is required.

Plaintiffs attempt to side-step this reality by retroactively recategorizing their unauthorized breaks as "on call" time. But this argument also fails. To be "on call," Plaintiffs must be able to show that their job *required* them to be "engaged to wait" as a firefighter is paid to stand by in case of a fire. Yet, as explained above, the Plaintiffs were not paid to sit on pins-and-needles, with their phone at arm's length, waiting for a call to clean their buildings. Cleaning

was, in fact, their full-time, active responsibility—a job they neglected whenever they repurposed paid company time as their own.

Further, Plaintiffs fail to raise a genuine issue of fact on their "on call" point because phone logs demonstrate that between 2012 and May 2014 Jaime received a *total* of only 44 calls from the Defendants, and Ramon received a *total* of only 21 calls over a six-year period. *See* (Leon Dec., ¶ 6). Jaime found his company phone-use to be so infrequent that he *voluntarily surrendered his phone* in May of 2014 because he felt it was no longer needed (after his son generated unusually high data-use playing with the phone's internet capabilities). *See* (Leon Dec., ¶ 4 & 6). Any benefit the Defendants received when Plaintiffs answered their phone once every few weeks over a six-year period during a time they should have been working anyway is (at best) *de minimis*. Since Plaintiffs fail to raise a genuine issue of material fact that their unauthorized breaks and occasional phone-use predominantly benefitted Tryax, summary judgment for the Defendants is required.

**III.    Material Issues Of Fact Preclude Summary Judgment On Plaintiffs' Overtime Rate Calculations Because Determining Whether There Was A Clear And Mutual Understanding Between The Parties Is A Factual Inquiry**

   **A.    *The Fluctuating Workweek Method Is Used To Calculate Overtime When An Employee Agrees To Receive A Fixed Salary For Fluctuating Hours***

Under the FLSA and NYLL, employers must pay their employees a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Therefore, to calculate the overtime wages owed, the Court must determine the "regular rate." Although workers may be paid hourly, the FLSA "does not require employers to compensate employees on an hourly rate basis." 29 C.F.R. § 778.109. When an employee is paid with a fixed weekly salary, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which

the salary is *intended to compensate*." 29 C.F.R. § 778.113(a) (emphasis added). In certain

instances, a presumption arises that "a weekly salary covers [only] 40 hours[, but] the employer

can rebut the presumption" with an "employer-employee agreement that [shows] the salary

cover[s] a different number of hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317

(S.D.N.Y. 1999).

For example, the employee can manifest such an intention by accepting a fixed salary for

hours that fluctuate from week-to-week. 29 C.F.R. § 778.114(a). *See Barbato v. Knightsbridge*

*Properties*, 2017 WL 9485716, at *7 (E.D.N.Y. Aug. 7, 2017). While some courts search for an

"express agreement," *Wong v. Hunda Glass Corp.*, 2010 WL 2541698, at *2 (S.D.N.Y. June 23,

2010), the absence of a written agreement is not fatal, and the employer may leverage other facts

that will help "the Court infer the terms of [the employer-employee] agreement from the *entire*

*course of their conduct*[.]" *Chopen v. Olive Vine, Inc.*, 2015 WL 1514390, *6 (E.D.N.Y.

Mar. 13, 2015) (emphasis added)).

### B.     *The Fluctuating Workweek Method Requires Employers To Pay Employees A Half-Time Overtime Rate, Not Time-And-One-Half*

The Second Circuit has explained that under the fluctuating workweek approach, "an

employee is assumed to have been paid for all hours worked at their regular rate of pay, with

excess overtime due for hours worked at *one-half the regular rate of pay*. The regular pay rate is

calculated by dividing the weekly pay by total hours worked that week." *Banford v. Entergy*

*Nuclear Operations, Inc.*, 646 Fed. Appx. 89, 90 (2d Cir. 2016) (emphasis added). The lower

courts in this circuit are split as to whether this analysis can be used "retroactively" to "calculate

damages," but the Second Circuit has emphasized (without taking a position) that the "sister

circuits to consider the question found that [the fluctuating workweek method] may be used to

calculate damages[.]" *Id.* at 91. This view makes sense as it would be a fiction to apply a fixed salary ***only to 40 hours*** where the parties clearly understood the salary to cover ***all*** hours.

Numerous other circuits have held that the unwritten and implied course of conduct between parties can determine whether the agreement to receive a fixed salary for varying hours was "clear and mutual." *See, e.g.*, *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997) (noting that the "existence of a [clear and mutual] understanding may [be implied] if it is clear from the employee's actions that he or she understands the payment plan"); *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 681 n. 8 (7th Cir. 2010) ("[T]he agreement that an employee is to be paid a fixed weekly salary for whatever hours she worked need not be evidenced in writing….[It can] be inferred from the parties' conduct.").

### C.   *District Courts In This Circuit Have Engaged In A Week-By-Week Analysis To Determine The Regular Rate Of Pay Based On Total Hours Worked Per Week Under The Fluctuating Workweek Approach*

To use the fluctuating workweek method, there must be a clear and mutual understanding between the parties that this method will be used to calculate overtime; the employee's hours must vary week to week; the salary actually paid must be fixed, regardless of the number of hours worked during a particular week; payment of the salary must be equal or greater than minimum wage; and the employee must be compensated in addition to the salary for all overtime worked. *See* 29 C.F.R. § 778.114(a). In using this analysis, district courts in this Circuit have engaged in a week-by-week analysis based on total hours worked per week to determine the regular rate of pay by week.

For example, in *Chopen*, the court "calculate[ed] plaintiff's regularly hourly rate by dividing his weekly salary by the number of hours that he worked *that week*" because the plaintiff worked 72 hours on some weeks and 69 in others. *Chopen*, 2015 WL 1514390 at *6. Similarly, in *Man Wei Shiu*, the court rejected plaintiff's calculations based on a 40-hour week

and calculated the regular rate based on a 67 hour week instead. *Man Wei Shiu v. New Peking Taste Inc.*, 2014 WL 652355, at *12 & n.14 (E.D.N.Y. Feb. 19, 2014). The Court did the same in *Santillan*. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011) (using "one-half of the hourly rate" to calculate overtime).

     **D.**     ***Genuine Disputes Over Whether The Course Of Dealing Between Tryax And Plaintiffs Created A Clear And Mutual Agreement Is An Issue Of Fact— Especially Given The Split Of Authority***

Courts have noted that determining whether the fluctuating workweek approach is applicable concerns questions of fact. Deciding whether the proper overtime calculation is half-time or time-and-one-half involves a "choice between two assumptions: either the employee agreed to be paid a lump sum per week for 40 hours of work…, or the employee agreed to be paid a lump sum per week, no matter how many hours he worked." *See Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417, 438 (S.D.N.Y. 2013). This issue can be decided based on the course of conduct between the parties . *See Chopen*, 2015 WL 1514390 at *6. So long as there is a genuine dispute over whether an agreement existed as to a fixed salary for the employee's fluctuating hours, factual issues exist, and the "Court cannot grant summary judgment…because the underlying facts regarding what Plaintiff agreed to…remain in dispute." *Id.* at 439. "A factfinder must conduct 'a factual inquiry into the actual agreement between the parties' and make 'a nuanced determination…as to whether the fixed salary covered up to 40 hours or an unlimited number of hours." *See Nelson v. Sabre Companies LLC*, 2018 WL 3543523, at *14 (N.D.N.Y. July 23, 2018). The split among the district courts and between the Circuits only further complicates matters on summary judgment. *See id.* at *14 (denying to rule in part because "of the split among the district courts in this circuit").

In this case, summary judgment is inappropriate because there are facts from which a factfinder could conclude the parties understood that Plaintiffs fixed salaries covered all their

weekly hours, not just the first 40 hours.  First, Plaintiffs' fixed salaries did, in fact, cover all their hours worked.  Their pay did not vary with variances in their hours.  Second, Plaintiffs each signed Notices of Pay Rate reflecting fixed weekly salary not for any specified number of hours. On these facts, Plaintiffs are not entitled to summary judgment as to how overtime should be calculated if they can provide overtime hours worked; a factfinder could find the fluctuating workweek method applies.

## **CONCLUSION**

For all of these reasons, the Court should grant Defendants' motion, deny Plaintiffs' motion and award such other and further relief as the Court deems proper and just.

Dated:  May 29, 2019
        New York, New York

Respectfully submitted,
CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*

By:   _____

Arthur J. Robb
The Empire State Building
350 Fifth Avenue, Suite 6110
New York, NY 10118
(212) 687-7410

- 24 -