```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
JAIME GUTIERREZ and RAMON GUTIERREZ,                                     :
                                                                         :          17 Civ. 6752 (PAE)
                                         Plaintiffs,                     :
                                                                         :          OPINION & ORDER
                        -v-                                              :
                                                                         :
TRYAX REALTY MANAGEMENT, INC.,                                           :
1027 WALLCO L.L.C., MICHAEL SCHMELZER,                                   :
MATTHEW SCHMELZER, MIGUEL LEON, and                                      :
CESAR MALDONADO,                                                         :
                                                                         :
                                         Defendants.                     :
                                                                         :
------------------------------------------------------------------------ X
```

PAUL A. ENGELMAYER, District Judge:

Plaintiffs here seek to collect unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650–665; *id.* §§ 190–199-A, for their work as porters at Bronx apartment buildings. The parties have moved for partial summary judgment on two issues that, while not dispositive of the case, if resolved pretrial would shape the scope of plaintiffs' claims. First, the parties have filed cross-motions on the question of whether plaintiffs—in light of security camera footage which defendants allege shows plaintiffs taking extended, unauthorized breaks during the workday—should, for overtime purposes, be treated as having worked for the entirety of the time they were present at the buildings, or whether such extended breaks, to the extent that they are established,[1] should be excluded from plaintiffs' total weekly hours. Second, plaintiffs have moved for

---

[1] The amount of such extended breaks is not before the Court and, to the extent that security footage may reveal such breaks, has not been quantified.

summary judgment on the question of whether, as a matter of law, they were entitled to time-and-a-half overtime pay for hours worked in excess of 40 hours per week.

For the following reasons, the Court grants summary judgment to plaintiffs on their second motion, holding that plaintiffs are eligible for time-and-a-half overtime pay for hours worked in excess of 40 per week. The Court, however, denies the parties' cross-motions for summary judgment on the first issue, the proper treatment of extended breaks for purposes of tabulating overtime hours, because unresolved disputes of material fact preclude pretrial resolution of that issue.

## I. Background

### A. Facts

#### 1. The Parties

Plaintiffs Jaime Gutierrez ("Jaime") and Ramon Gutierrez ("Ramon") are porters responsible for cleaning Bronx apartment buildings managed by defendant Tryax Management, Inc. ("Tryax"). From 2010 through 2016, defendant Michael Schmelzer was Tryax's President and defendant Matthew Schmelzer was Tryax's Vice President. Since 2016, Matthew Schmelzer has been the sole officer of Tryax. Defendant 1027 Wallco LLC ("Wallco") is a New York business that shares a headquarters with Tryax. Michael and Matthew Schmelzer are managing members of Wallco. Defendant Miguel Leon is Tryax's Director of Administration and acting supervisor of defendant Cesar Maldonado, who is a field supervisor for Tryax and has supervised Ramon since January 2013 and Jaime since April 2015.

    **2.**    **Factual Background**[2]

Since February 1998, Jaime has worked as a porter at 1027 Walton Avenue, a six-floor, 85-unit apartment building in the Bronx. JSF ¶¶ 26, 27. Since October 1998, Ramon has also worked as a porter, *id.* ¶ 31, splitting his time between three buildings: 1454 Walton Ave., 1475 Walton Ave., and 1478 Walton Ave., *id.* ¶ 33. The buildings where plaintiffs work (together, the "Properties") are all managed by Tryax. *Id.* ¶¶ 18, 20.

Plaintiffs' responsibility as porters "is to keep the building clean" by, *inter alia*, separating trash from recyclables, "taking out the garbage, sweeping, mopping, cleaning windows, and sweeping the sidewalks." *Id.* ¶ 86; *see also id.* ¶ 87. In addition, Ramon maintains and, when necessary, unclogs the trash compactor at 1454 Walton Ave. *Id.* ¶ 92.

---

[2] The Court draws its account of the underlying facts from the parties' respective submissions on the motion for summary judgment, including: plaintiffs' statement pursuant to Local Civil Rule 56.1, *see* Dkt. 83 ("Pl. 56.1"); defendants' Rule 56.1 statement, *see* Dkt. 80 ("Def. 56.1"), and response to plaintiffs' Rule 56.1 statement, *see* Dkt. 85 ("Def. 56.1 Response"); plaintiffs' response to defendants' Rule 56.1 statement, *see* Dkt. 87 ("Pl. 56.1 Response"); the Arenson Declaration, *see* Dkt. 73 ("Arenson Decl."), and attached exhibits including but not limited to the Deposition of Jaime Gutierrez, Arenson Decl., Ex. A ("Jaime Dep."), Deposition of Ramon Gutierrez, Arenson Decl., Ex. B ("Ramon Dep."), Deposition of Miguel Leon, Arenson Decl., Ex. F–G ("Leon Dep."), Deposition of Cesar Maldonado, Areson Decl., Ex. E ("Maldonado Dep."), and Deposition of Manuel Cepeda, Arenson Decl., Ex. I ("Cepeda Dep."); the exhibits attached to defendants' cross-motion for summary judgment, Dkt. 78 ("Def. Mtn."), including but not limited to the Declaration of Miguel Leon, Def. Mtn., Ex. B ("Leon Decl."), Declaration of Cesar Maldonado, Def. Mtn., Ex. C ("Maldonado Decl."), and Declaration of Edgardo Heredia, Def. Mtn., Ex. D ("Heredia Decl."); and the parties' joint statement of undisputed facts, Dkt. 66 ("JSF").

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Porters are also "responsible for responding to any occurrences that require cleaning," *id.* ¶ 101, and assisting the building superintendent with tasks such as moving furniture on an as-needed basis, *see id.* ¶ 102. Porters are issued a company cell phone, *id.* ¶ 115, although the parties dispute how important the phones are for the successful completion of a porter's duties.

Tryax has never issued a written schedule of hours for plaintiffs. *Id.* ¶ 66. Throughout their employment, they have been scheduled to work from 8 a.m. to 4 p.m., five days a week. *Id.* ¶¶ 69–70. "Tryax provides a windowless room in the basement of 1454 Walton Avenue for Ramon to use to change his clothes, keep his things, eat his lunch and to use as a break room." *Id.* ¶ 71. "Tryax provides a small studio apartment on the first floor of 1027 Walton Avenue for Jaime to use to change his clothes, keep his things, eat his lunch and to use as a break room." *Id.* ¶ 72.

In September 2017, plaintiffs filed the complaint in this case, alleging that they had routinely worked more than 40 hours per week but had never received overtime pay. *See* Dkt. 58 (First Amended Complaint ("FAC")) ¶¶ 37, 47, 54–55, 63. In the course of responding to the complaint, Tryax began reviewing video footage from the Properties. This footage, Tryax asserts, shows plaintiffs regularly taking extended—and, Tryax claims, unauthorized—breaks in their respective on-site break rooms throughout the workday. Leon Decl. ¶ 14.

As a result of this revelation, Tryax has now moved for partial summary judgment. Before undertaking a full review of video footage for the entire period in which plaintiffs seek overtime pay, it seeks a ruling that, as a matter of law, plaintiffs are not entitled to count time spent on unauthorized breaks toward hours that might establish their eligibility for overtime. Plaintiffs have cross-moved for summary judgment on this point. They ask the Court to rule that all their hours on the premises during their work shifts are compensable, even if spent on lengthy

breaks. Plaintiffs have also moved for summary judgment on a separate issue, asking the Court to hold as a matter of law that the weekly salary they received compensates them only for 40 hours of work, such that they are eligible for time-and-a-half overtime pay for hours worked in excess of that in a given week.

### B. Procedural History

On September 5, 2017, plaintiffs filed their complaint. Dkt. 1. On November 7, 2017, defendants, who had waived service, *see* Dkt. 22, filed an answer, Dkt. 25, and the parties stipulated to the dismissal of plaintiffs' third cause of action, Dkt. 26. After the Court referred the case to Magistrate Judge Freeman for settlement purposes, Dkt. 37, the parties participated in settlement discussions while undertaking discovery; the Court extended the discovery process several times in deference to settlement discussions, but these ultimately did not bear fruit. *See* Dkts. 43, 46, 51, 56. On January 14, 2019, plaintiffs filed their First Amended Complaint. FAC. On March 20, 2019, the Court held a pre-motion conference. *See* Dkt. 65.

On May 3, 2019, plaintiffs filed a motion for partial summary judgment, Dkt. 71, a supporting memorandum of law, Dkt. 72, and the Arenson Declaration, Dkt. 73. On May 6, 2019, plaintiffs filed a corrected memorandum of law. Dkt. 75 ("Pl. Mem."). On May 29, 2019, defendants filed a cross-motion for summary judgment with exhibits, Def. Mtn., a combined memorandum of law in support and in opposition to plaintiff's motion, Dkt. 79 ("Def. Opp'n Mem."), and a Rule 56.1 statement, Def. 56.1. On June 6, 2019, plaintiffs filed a Rule 56.1 statement. Pl. 56.1. On June 14, 2019, defendants filed a response to plaintiffs' 56.1 statement. Def. 56.1 Response. On June 28, 2019, plaintiffs filed a response to defendants' 56.1 statement, Pl. 56.1 Response, and a combined memorandum of law in opposition to defendants' motion and in support of their own, Dkt. 88 ("Pl. Opp'n-Reply Mem."). On July 12, 2019, defendants filed a reply. Dkt. 89 ("Def. Reply. Mem.").

**II.     Legal Standards for Summary Judgment**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, brackets, and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**III.     Discussion**

      **A.     Cross-Motions for Summary Judgment as to Whether Extended Breaks Between 8 a.m. and 4 p.m. Count Towards Overtime Hours**

The Court first addresses the parties' cross-motions. These ask the Court to determine whether, as plaintiffs argue, all 40 hours that they were scheduled to work each week—from 8 a.m. to 4 p.m., five days per week—are countable as "work" under the FLSA for purposes of tabulating plaintiffs' overtime eligibility, or whether, as defendants claim, plaintiffs' extended breaks should be excluded from countable hours.

"Enacted in 1938, the [FLSA] established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek. An employer who violated these provisions could be held civilly liable for backpay, liquidated damages, and attorney's fees." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014) (internal citations omitted).

Because the FLSA sets a 40-hour threshold for statutory entitlement to overtime pay, it is necessary in adjudicating overtime claims to determine whether the plaintiff employee, in fact, worked for more than 40 hours in the week or weeks at issue. That question initially presents a question of law, because, in an apparent oversight that has spawned hundreds of pages of judicial opinions, the FLSA did not define the term "work." *See, e.g.*, *id.*; *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008).

The Supreme Court first supplied a definition of "work" in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944) ("*Tennessee Coal*"). There, the Court held that absent evidence of legislative intent to the contrary, the definition of "work" or employment should mirror "how those words are commonly used—as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598. The next

7

Term, the Court clarified that "exertion is not necessarily required for an activity to be compensable because 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.' The issue is whether the 'time is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case.'" *Singh*, 524 F.3d at 367 (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). "Two years later, the Court further clarified that 'work' 'includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.'" *Gibbs v. City of New York*, 87 F. Supp. 3d 482, 491 (S.D.N.Y. 2015) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946)).

This "predominant benefit" test has been repeatedly used by the Second Circuit and is the departure point for the Court's inquiry here. *Singh*, 524 F.3d at 367–68; *Reich v. S. New Eng. Telecommc'ns Corp.*, 121 F.3d 58, 64–65 (2d Cir. 1997) ("*SNET*"). The ultimate question of whether an employee "is entitled to overtime pay is a mixed question of law and fact." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir. 1998). The question of whether a given activity constitutes "work" under this test is one of law, but it is informed by questions of fact, including how the employee spent his time and, critically, what the parties' expectations were as to the employee's duties. *See, e.g.*, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Holzapfel*, 145 F.3d at 521; *Gibbs*, 87 F. Supp. 3d at 490. Therefore, before it can resolve the legal question presented by the cross-motions for summary judgment as to whether plaintiffs' extended unauthorized breaks constituted "work" for overtime purposes, the Court must determine whether the underlying material facts are sufficiently uncontested to enable a sure resolution of that question. Regrettably, but as the Court forecast at the pre-motion

conference, the Court concludes that material facts are too indeterminate to permit resolution of that question on summary judgment. *See* Dkt. 67 at 29, 31–32.

In most cases where this question is resolved on summary judgment, the manners in which an employee spends his or her time and was expected to spend his or her work hours are undisputed, and the question is whether, as a matter of law, a given activity in the context of that workplace qualifies as "work." *Compare Gibbs*, 87 F. Supp. 3d at 489–90 (resolving on summary judgment whether plaintiffs' attendance at employer-mandated alcohol counseling sessions constituted work under the FLSA), *with O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 582 (S.D.N.Y. 2013) ("[Q]uestions of fact preclude any determination at this time concerning how much of Plaintiff's 'on-call' time constitutes 'work' within the meaning of the FLSA. . . . This is a fact-specific inquiry best left to the fact finder."). Here, however, both the manner in which plaintiffs were supposed to spend their workdays, and the way they in fact did, are contested. Before the Court can determine, as a matter of law, how much of plaintiffs' time during the workday was spent predominantly for their employer's benefit, a number of factual questions must be resolved.

First, the parties dispute the manner in which the plaintiffs were supposed to perform their job. There has never been a written job description for their posts, JSF ¶ 82, and the person who hired the plaintiffs some 20 years ago, *see* Def. 56.1 ¶¶ 1, 31—and presumably explained their duties to them—is now deceased, *see* Jaime Dep. at 12–13. Defendants claim that plaintiffs were expected to not only complete a set list of tasks each day but to constantly "round the building" looking for tasks to perform as opposed to idling in their break room. *See, e.g.*, Leon Decl. ¶ 9. Plaintiffs, relying in part on an absence of testimony to this effect as to the original terms of plaintiffs' employment, argue that there was no such "rounding" requirement. *See, e.g.*,

Leon Dep. at 38–49; Maldonado Dep. at 39, 42–49; Cepeda Dep. at 32–39. Plaintiffs further point out that such a requirement is inconsistent with how they have performed their jobs, to the apparent satisfaction of management, tenants, and the building superintendents, over the past two decades. *See* Leon Dep. at 34–35; Cepeda Dep. at 23–24. On a paper summary judgment record, the Court cannot resolve this critical factual dispute over the extent to which the plaintiffs were permitted, as part of their job duties, to wait behind the scenes during lulls in their workday for concrete tasks to crystallize. And based on the record evidence that has been marshalled for the Court, which largely consists of competing claims in testimony and affidavits from plaintiffs and from defendants' witnesses, resolution of this dispute will almost certainly require the factfinder to make credibility determinations.

The factual dispute over plaintiffs' job duties is further complicated by the fact that there does not appear to be dispositive documentary evidence on this point. There were no written policies regarding how often, and for how long, plaintiffs were permitted to take breaks during the workday. *See* Def. 56.1 ¶¶ 51–52; Pl. 56.1 Response ¶¶ 51–52. While plaintiffs assert that they were able to take breaks as their workflow allowed, defendants assert that they were not authorized to take any breaks other than lunch. Both parties rely, in part, on statements by Tryax Director of Administration Leon. In his deposition, Leon stated that he did not know whether the plaintiffs had scheduled breaks, and, describing their activities, explained, "[t]hey take a break any time they want. There is no schedule, like, that you have to take a break at this time. Whenever they go, go for coffee or they do what they do." Leon Dep. at 170–71. In a declaration that defendants submitted in connection with summary judgment, however, Leon stated that he is "unaware of any supervisor or manager at Tryax ever telling the porters they could take breaks whenever they want, without management approval." Leon Decl. ¶ 11. The

10

trier of fact will need to weigh the testimony and credibility of plaintiffs, Leon, and others to determine the latitude that existed for authorized breaks during the workday, including whether plaintiffs, when not actively performing tasks, were permitted to take protracted breaks in their break rooms, as defendants proffer the security camera footage reveals.

A related factual dispute is whether plaintiffs' active duties could be completed in fewer than eight hours, or whether such duties regularly required eight hours to complete. Such would bear on whether idling in a break room for long stretches would have impinged on those duties. Defendants argue plaintiffs had work to occupy them throughout the day, relying on plaintiffs' deposition testimony that their jobs kept them constantly busy and never resting for more than a few minutes at a time. *See* Jaime Dep. at 21–22, 78–79, 89, 93–94; Ramon Dep. at 39–40. At the same time, however, defendants have asserted that plaintiffs spent extended periods of time in the breakroom, without identifying concrete tasks that went unattended to as a result. Def. Mem. 18–19. And plaintiffs contend that defendants are misconstruing their deposition testimony, which, they say, did not and was not meant to convey that their workdays were never free of down time. *See, e.g.*, Pl. 56.1 Response at ¶¶ 6, 7, 20, 23, 25, 44. On this point, too, the factual record is too elusive to permit a sure conclusion.

There is also an unresolved factual question, potentially implicating credibility, presented by plaintiffs' explanation that, at all times between 8 a.m. and 4 p.m., including when they were in the break room, they were on call. Plaintiffs note that they each had a company-issued cell phone. They attest that, when not attending to a task, they were ready to, and often did, respond to calls asking them to clean up messes or help the building superintendent with a project. *See* Pl. 56.1 ¶¶ 132–62. If so, plaintiffs' time in break rooms on a building's premises could be readily viewed as consistent with their job duties. Defendants, apart from contending that

plaintiffs were expected to be constantly circulating around the building and not idling behind the scenes, note that records of the company-issued cell phones reveal a dearth of calls between plaintiffs and other Tryax employees. Leon Decl. ¶ 6. Plaintiffs respond that they placed or received many work calls using their personal phones. Pl. 56.1 Response ¶¶ 86–87, 94–97. The dispute relating to plaintiffs' claim to have been "on call" presents an added area of factual irresolution relevant to the application of the "predominant benefit" test. It reinforces that material factual disputes preclude deciding, on summary judgment, whether lengthy periods during the 8 a.m. to 4 p.m. workday that the plaintiffs may have spent in a break room without attending to a task nevertheless qualified as "work" for the purposes of tabulating hours towards overtime.

For these reasons, the Court denies both parties' motions for summary judgment on this point.

### B. Fluctuating Workweek ("FWW")

Plaintiffs separately seek summary judgment on a distinct point relating to their overtime eligibility. They assert that, given the undisputed facts, as a matter of law, the weekly salary they received from Tryax covered only their first 40 hours of work in a given week, such that they were entitled to time-and-a-half overtime pay for additional hours worked. Defendants oppose this motion. They argue that the evidence could support a finding that the Fluctuating Workweek compensation method ("FWW") applies. The Court grants plaintiffs' motion for summary judgment on this point, because the FWW compensation method could not apply on the facts here.

There is a rebuttable presumption that a weekly salary reflects compensation for 40 hours of work. *See, e.g.*, *De Jesus v. Empire Szechuan Noodle House Inc.*, No. 18 Civ. 1281 (JPO), 2019 WL 1789901, at *2 (S.D.N.Y. Apr. 24, 2019); *Berrios v. Nicholas Zito Racing Stable, Inc.*,

849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012). An employer and employee are free, however, to negotiate alternative compensation arrangements. One such arrangement—which defendants argue applies here—is the FWW.

In 1968, the Department of Labor ("DOL") issued a guidance document, which remains substantially unchanged today,

> address[ing] the payment of overtime to salaried employees "who do not customarily work a regular schedule of hours." 29 C.F.R. § 778.114(c). The bulletin was issued in connection with two Supreme Court cases that had addressed payment of overtime to employees who had fluctuating hours from week-to-week, and who wished to receive a predictable, flat rate of pay: *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) and *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942).

*Mermaid Touring Inc.*, 968 F. Supp. 2d at 583–84. As the DOL explained, "[a]n employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a).

Importantly, however, an employee paid under an FWW arrangement is still entitled to overtime pay when he works more than 40 hours in a week. The difference lies in the amount of incremental pay earned for hours above 40. Whereas an employee is typically entitled to "time and a half" their usual hourly rate of pay for any overtime,[3] where the FWW applies, "[t]he employee's salary is intended to compensate the employee at a 'straight time' rate for whatever hours are worked," however many that may be. *Banford v. Entergy Nuclear Operations, Inc.*,

---

[3] The FLSA sets a maximum number of hours employees may work per week. *See* 29 U.S.C. § 207. For every hour a non-exempt employee works above 40 in a given week, the FLSA requires employers to pay "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

No. 12 Civ. 131 (WKS), 2014 WL 12717735, at *2 (D. Vt. Sept. 18, 2014). As a result, under the FWW methodology, any overtime hours are compensated at one half of, rather than 150% of, the employee's regular hourly rate.[4] "Payment for overtime hours at one-half the regular rate satisfies the overtime requirement because those hours have already been compensated at the straight time regular rate. In other words[,] the 'time' comes from the regular rate and the 'half' comes from the additional fifty [percent] overtime premium." *Id.*; *see also Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 675 (7th Cir. 2010) ("[The FWW] treats the fixed weekly wage paid to the employee as compensation at the regular rate for all hours that the employee works in a week, including overtime hours. The employer will separately owe the employee a premium for the overtime hours, but because he has already been compensated at the regular rate for the overtime hours by means of the fixed wage, the employer will owe him only one-half of the regular rate for those hours rather than time plus one-half."). Therefore, even if defendants were correct that the FWW might apply here, it would merely limit the rate of overtime pay to which plaintiffs were entitled for such hours.

In any event, defendants, in opposing plaintiffs' motion for summary judgment, fail to adduce evidence from which a reasonable juror could find that the FWW methodology applies here. An employer may pay overtime wages to an employee using the FWW method only if the following five conditions are met:

> (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours

---

[4] In *Missel*, the Supreme Court held that employers could, under the FLSA, calculate a FWW employee's regular rate by dividing their fixed weekly salary by the number of hours actually worked in a given week, and then use that rate as the basis for calculating overtime pay. *Missel*, 316 U.S. at 580. As the Court recognized, this method meant that "the longer the hours the less the rate and the pay per hour"; however, it stated, "[t]his is not an argument . . . against this method of determining the regular rate of employment for the week in question." *Id.*

> the employee works during the week (excluding overtime premiums); (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

*Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013).

Here, defendants fail to adduce evidence as to several required FWW criteria. They have not identified any evidence that plaintiffs' hours fluctuated from week to week. To the contrary, the parties have stipulated that "[t]hroughout [their] employment at Tryax," both Ramon and Jaime have "been scheduled to begin work no later than 8 a.m. and end work no earlier than 4 p.m., on [their] regularly scheduled workdays." JSF ¶¶ 69–70. That alone forecloses use of the FWW here to cabin plaintiffs' rate of overtime pay. *Wills*, 981 F. Supp. 2d at 255.

Defendants also fail to adduce any evidence from which a jury could find a "clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period[,]" such that plaintiffs would receive the weekly pay "as straight time pay for whatever hours he is called upon to work" and therefore only be entitled to an overtime premium of one-half their weekly rate. 29 C.F.R. § 778.114(a); *Wills*, 981 F. Supp. 2d at 255. On the contrary, copies of a NYLL notice—entitled "Notice for Employees Paid a Weekly Rate or Salary for a Fixed Number of Hours (40 or Fewer in a Week)"—which were signed by each plaintiff in the course of their employment and were produced during discovery, suggest the contrary. These uniformly state "N/A" in the section for "Overtime Pay Rate," Arenson Decl., Ex. O; *id.*, Ex. R. Such is inconsistent with defendants' premise of an agreement to half-time overtime pay. *See Urnikis-Negro*, 616 F.3d at 677 (the FWW "requires both a 'clear mutual understanding' between the employer and employee that

15

the fixed wage will constitute the employee's regular or straight-time pay for any and all hours worked in a given week and the separate payment of an overtime premium for any hours in excess of 40 that are worked in that week"); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 207 (D. Conn. 2013) ("[T]his court concludes that an employee cannot achieve a clear, mutual understanding as to whether a fixed salary is intended to cover all hours worked unless that understanding includes some provision for the payment of overtime[.]"); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 148 (D. Conn. 2012) (for the FWW to apply, "the parties must strike a bargain that includes two terms—as the main clause [of 29 C.F.R. § 778.114(a)] instructs, that a fixed salary will cover base pay no matter the hours worked, and, as the parenthetical phrase suggests, that employers will cover overtime hours with a separate bonus").

      Moreover, even if these documents did not exist, defendants have failed to come forward with any evidence from which a jury could find a mutual understanding between plaintiffs and Tryax to depart from the statutory norm under which time-and-a-half pay would be earned for work in excess of 40 hours per week. This precludes use of the FWW method. *See, e.g.*, *Peterson v. Snodgrass*, 683 F. Supp. 2d 1107, 1125 (D. Or. 2010) (rejecting application of FWW because "the record reveals no evidence of a 'clear mutual understanding' between [employer] and [employee] that her . . . annual salary was intended to compensate her for all hours she worked, no matter how many or how few"); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 60 (D.D.C. 2006) (holding that FWW did not apply because, among other reasons, there was no clear mutual understanding between the parties that the employee would receive the same weekly salary regardless of the hours worked in a given week); *Burgess v. Catawba County*, 805 F. Supp. 341, 348 (W.D.N.C. 1992) (holding that FWW cannot apply because "[t]here is no

16

evidence that there was a clear mutual understanding that the salary of the EMS employees covered any and all hours worked"). Accordingly, because defendants have failed to adduce any evidence from which a jury could find either the first or fourth elements necessary for a FWW arrangement to govern plaintiffs' overtime compensation, the FWW cannot apply here.

The Court, accordingly, grants plaintiffs' motion for summary judgment on this point. To the extent plaintiffs are found to have worked overtime hours, they are entitled to statutory time-and-a-half overtime pay, consistent with the FLSA and NYLL.

## CONCLUSION

For the reasons set out above, the Court denies the parties' cross-motions for summary judgment on the question of how much of plaintiffs' workday is compensable under the FLSA for purposes of tabulating overtime hours, and in particular whether extended breaks taken by plaintiffs during workday hours while in the buildings where they worked as porters qualified as "work" for overtime calculation purposes. The Court, however, grants plaintiffs' motion for summary judgment on the separate issue of their eligibility for statutory overtime pay. The Court holds that plaintiffs' weekly salary covered only 40 hours of work as a matter of law, and that plaintiffs are therefore entitled to time-and-a-half overtime pay for hours worked in excess of 40 each week. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 71 and 78.

This case, barring settlement, will now proceed toward trial. The Court directs the parties, by March 31, 2020, to submit a complete joint pretrial order, consistent with the Court's individual rules, and accompanied by proposed voir dire, requests to charge, and motions *in limine*. Responses to the motions *in limine* are due April 14, 2020. Following receipt of these

materials, the Court will schedule a conference with counsel to discuss the forthcoming trial, resolve motions *in limine*, and set a trial date.

SO ORDERED.

                                                   *Paul A. Engelmayer*
                                                   Paul A. Engelmayer
                                                   United States District Judge

Dated: February 18, 2020
           New York, New York