# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), is entered into between Jaime Gutierrez, Ramon Gutierrez (each, an "Employee" and together, "Employees") and Tryax Realty Management, Inc. ("Employer").

**WHEREAS,** Employees have asserted various legal claims against Employer and other named defendants; and

**WHEREAS**, Employer has denied the material allegations of Employees' claims and asserted various defenses; and

**WHEREAS**, Employees and Employer have agreed to fully and finally resolve their disputes in accordance with and pursuant to the terms and conditions set forth herein;

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein, it is agreed as follows:

1. <u>Definitions.</u>

    1.1. "<u>Action</u>" means the following court action: SDNY Civil Action No. 17-cv-6752 (PAE).

    1.2. "<u>Claims</u>" means any past and present matters, claims, demands, causes of action, and appeals of any kind--whether at common law, pursuant to statute, ordinance or regulation, and whether arising under federal, state, local or other applicable law--that concern or relate to minimum wage and/or overtime pay, wage payments, failure to pay for all hours worked, failure to provide wage statements and/or wage notices, failure to keep appropriate timekeeping and payroll records, which could have been alleged in the Action ("Released Claims"). The Released Claims include, without limitation, claims under the Fair Labor Standards Act, the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., the New York Wage Payment Act, New York Labor Law §§ 190 et seq., the New York Department of Labor regulations, 12 N.Y.C.R.R. part 142, and all other statutes and regulations related to the foregoing.

    1.3. "<u>Effective Date</u>" means the date upon which this Agreement is judicially approved.

    1.4. "<u>Parties</u>" means Employees and Employer.

    1.5. "<u>Person</u>" means natural persons (including individuals employed by Employer), corporations, partnerships, sole proprietorships, unions, associations, federations or any other kind of entity.

    1.6. "<u>Releasees</u>" means Employer, its current and former successors, assigns, parent, subsidiary and affiliated entities and each of their respective current and former owners, directors, officers, agents, managers, employees, insurers, and attorneys,

1

      including, but not limited to all named defendants in the Action, to wit, 1027 Wallco L.L.C., Michael Schmelzer, Matthew Schmelzer, Miguel Leon and Cesar Maldonado.

2.      <u>No Admission of Wrongdoing.</u>  This Agreement and compliance with it shall not be construed as an admission by Employer of any liability whatsoever, or of any violation of any statute, duty, contract, right, or order and Employer denies any violation of any statute, duty, contract, right, or order.

3.      <u>Release.</u>  In consideration of Employer's promises and undertakings contained in this Agreement, to which Employee acknowledges he is not otherwise entitled, each Employee releases and forever discharges Releasees from, or in respect of, all Claims which Employee now has or may have against Employer and/or any of the Releasees jointly, severally or singly, both personally and in their official capacity, from the beginning of time to the Effective Date of this Agreement ("Released Claims").

4.   <u>Covenant Not to Sue.</u>

    4.1.   In consideration of Employer's undertakings in this Agreement, each Employee, individually and on behalf of Employee's heirs, executors, administrators, agents and assigns, promises not to sue Employer or the other Releasees both in their individual as well as in their respective capacities, concerning any Released Claim.

    4.2.   Employee represents that Employee has no pending claims, in any forum, against Releasees concerning any Released Claims, other than the Action. Employee agrees that if any court, tribunal, or administrative agency of competent jurisdiction assumes or has assumed jurisdiction over any such claims, Employee will promptly request in writing that the court, tribunal or administrative agency withdraw the matter with prejudice.

5.   <u>Limitations on the Releases.</u>  For the avoidance of doubt, the Releases and Covenant Not to Sue in this Agreement are limited by the following:

    5.1.   Nothing in Agreement is intended to, or shall, release the Parties from their obligations under this Agreement.

    5.2.   Nothing contained in this Agreement is intended to, or shall, interfere with Employee's rights under federal, state, or local civil rights or employment discrimination laws (including, but not limited to, Title VII, the ADA, the ADEA, GINA, USERRA, or their state or local counterparts) to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of this Agreement. Employee shall not, however, be entitled to any relief, recovery, or monies in connection with any such claims brought against Employer and/or any of the Releasees, regardless of who filed or initiated any such complaint, charge, or proceeding.

6. <u>FLSA Claims.</u> Employee acknowledges and agrees that (a) payments made under this Agreement, as set forth herein, are in resolution of claims asserted under the Fair Labor Standards Act; (b) there exist *bona fide* disputes as to Employee's FLSA claims; and (c) this Agreement provides a fair and reasonable settlement of Employee's FLSA claims.

7. <u>Payment.</u>

   7.1. As good consideration for Employee's promises and undertakings under this Agreement, Employer agrees to pay a gross Settlement Sum of $295,051.05, allocated as set forth in the attached <u>Schedule A</u>.

   7.2. Employee and Employee's counsel each shall provide social security or taxpayer identification numbers to Employer for reporting purposes.

   7.3. Payment shall be made within ten days after the Effective Date, provided Employee and Employee's counsel have fulfilled all obligations under this Agreement.

   7.4. No salary, severance pay, benefits, vacation pay, sick pay or other payments or additional monies beyond the payments required by this Agreement will be made by Employer to Employee and the Parties agree that no salary, benefits, or other payments beyond the payments required by this Agreement are owing by Employer to Employee.

8. <u>Tax Liability</u>. Employer makes no representations concerning the tax treatment of any of the payments required under this Agreement. Employee agrees to defend, indemnify and hold Employer harmless from any liabilities arising from or relating to Employee's failure to pay any taxes due from Employee as a result of the payments required under this Agreement.

9. <u>Remedies for a Breach of this Agreement.</u> The Court shall retain jurisdiction to resolve any claim arising from or relating to a breach of this Agreement. In the event of an action to resolve such a claim, the prevailing party shall be awarded its reasonable attorney's fees and costs. If Employee commences an action in any forum against any Releasee concerning a Released Claim, then such Releasee(s) shall be entitled to its and/or their reasonable attorney's fees and costs incurred defending against such a claim.

10. <u>Discontinuance of Action.</u> The Parties agree to work cooperatively to effectuate all steps necessary to discontinue the Action, including, but not limited to preparation and submission of a motion for judicial approval and stipulations of dismissal.

11. <u>Controlling Law.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of conflict of laws.

12. <u>Full Agreement; No Implied Modification.</u> This Agreement contains the full and complete understanding between the parties hereto and supersedes all prior understandings, whether written or oral pertaining to the subject matter hereof. This Agreement may not be amended or modified otherwise than by written agreement executed by Employee and by a duly authorized representative of Employer.

13.     <u>Partial Invalidity does not Affect the Rest of the Agreement.</u>  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

14.     <u>Non-Enforcement is not a Waiver.</u>  The failure of either party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right either party may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

15.     <u>Execution in Counter-Parts.</u>  This Agreement may be executed in counterpart by each party. Facsimile or electronically signed and/or transmitted counterparts will be considered one and the same instrument, and each executed Agreement, when taken together, shall constitute a complete Agreement.

16.     <u>Acknowledgements by Employee.</u>  By signing this Agreement, Employee acknowledges that Employee:

   16.1.   Has carefully read, and understands, this Agreement;

   16.2.   Has been given a reasonable time to consider Employee's rights and obligations under this Agreement and has consulted with an attorney and/or any other advisors of Employee's choice or has voluntarily chosen not to do so;

   16.3.   Was advised to consult with an attorney of Employee's choice at the time this Agreement was given to Employee;

   16.4.   Understands that this Agreement is legally binding and by signing it Employee gives up certain rights;

   16.5.   Has voluntarily chosen to enter into this Agreement and has not been forced or pressured in any way to sign it;

   16.6.   Has not relied upon any representation, statement or omission made by any of Employer or the other Releasees, or by Employer or the other Releasees' agents, attorneys or representatives with regard to the subject matter, basis or effect of this Agreement or otherwise, other than those expressly stated in this Agreement;

   16.7.   That Employee has been paid for all Employee's hours worked without deduction, except for usual payroll deductions.

17.     <u>Reconocimiento en Español (Spanish Acknowledgment).</u>  El empleado declara que su idioma principal es el español y que el abogado de ese empleado, Arenson Dittmar & Karban ha revisado todos los términos de este Acuerdo con él en español. El empleado comprende completamente todos los términos de este Acuerdo y los acepta voluntariamente mediante la firma a continuación. (Employee represents that his primary language is Spanish and that Employee's counsel, Arenson Dittmar & Karban has reviewed all terms of this Agreement with Employee in Spanish.  Employee fully understands all terms of this Agreement and voluntarily accepts them by signing below.)

4

firma a continuación. (Employee represents that his primary language is Spanish and that Employee's counsel, Arenson Dittmar & Karban has reviewed all terms of this Agreement with Employee in Spanish. Employee fully understands all terms of this Agreement and voluntarily accepts them by signing below.)

18.  Singular and Plural. Wherever appropriate in this Agreement, a singular term shall be construed to mean the plural where necessary, and a plural term the singular. For example, the term Employee shall refer to both Employees together.

19.  Headings. The headings are not part of the provisions hereof and shall have no force or effect and are provided for the convenience of the parties only; they shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.

20. Signatories' Representations. The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

Agreed to and accepted on this date: 07/13/2020

_Jaime Gutierrez_

Agreed to and accepted on this date: 07/13/2020

_Ramon Gutierrez_

Agreed to and accepted on this date: 7/23/2020

Tryax Realty Management, Inc.
By: Matthew Schneler
Title: President

5

**SCHEDULE A**

| Payee | Amount | Allocation |
|---|---|---|
| Jaime Gutierrez | $50,000 | |
| Ramon Gutierrez | $59,500 | |
| Arenson Dittmar & Karban | $158,216.05 | Fees |
| Arenson Dittmar & Karban | $27,335.00 | Costs |

i